## APPEAL OF H. NORTHWOOD & CO.

Docket No. 5122. Decided August 3, 1926.

1. A taxpayer keeping its books of account and making its income-tax returns for 1916 and subsequent years upon the accrual basis and deducting from gross income for the years 1916 and 1917 royalties shown by its books of account to have accrued but not to have been paid, and compromising its liability for such royalties in 1921 for an amount less than the amount shown by its books of account, is not entitled to restate its net income for the years 1916 and 1917 by excluding from claimed deductions royalties accrued

but not paid and to claim as a deduction from gross income of 1919 the amount of a verdict rendered against it by a jury in 1919 in respect of unpaid royalties for 1916 and 1917, upon which verdict a judgment was rendered by the court in 1920, which judgment was compromised in 1921 for less than its face.

2. A corporate taxpayer receiving the proceeds in 1919 of a life insurance policy upon the life of its president who died during the year did not receive taxable income from the receipt of such proceeds.

3. A corporate taxpayer which never charged off from the book value of its depreciable assets any amount for depreciation during the years prior to 1918, but which more than offset depreciation sustained by charges to expense of the cost of improvements, replacements, and repairs, should not have its surplus reduced in computing invested capital by an amount representing theoretical depreciation sustained.

*W. A. Seifert, Esq.*, for the petitioner.
*John W. Fisher, Esq.*, for the Commissioner.

Before LITTLETON, SMITH, and TRUSSELL.

This is a proceeding for the redetermination of income and profits taxes for the years 1918 and 1919 in the aggregate amount of $40,988.06. The taxpayer alleges error on the part of the Commissioner:

(1) In disallowing a deduction from gross income for 1919 of $42,523, which was the amount of a jury verdict rendered against the taxpayer during the taxable year.

(2) In including in gross income for 1919, $25,222.36, representing the proceeds of a life insurance policy paid on the life of one of the taxpayer's officers.

(3) In deducting from invested capital for 1918 and 1919 the sum of $33,182.74, to cover alleged depreciation for years prior to 1918

(4) In failing to include in invested capital for 1918 and 1919, $38,884.12, the amount of a reserve set up by the taxpayer on its books as royalties accrued under a contract.

(5) In reducing invested capital for 1918 and 1919 by prorating income and profits taxes for the years 1917 and 1918 in the manner outlined in *Appeal of Guarantee Construction Co.*, 2 B. T. A. 1145.

### FINDINGS OF FACT.

1. The taxpayer is a West Virginia corporation with its principal office in Wheeling. It has continuously been engaged since the time of its incorporation in 1906 in the manufacture of glass novelties. It is also engaged in the making of lighting or illuminating glassware, such as glass bulbs.

2. Under date of December 31, 1915, the taxpayer entered into a contract with the Macbeth-Evans Glass Co. by which it was granted a license to manufacture semi-translucent glass under Letters Patent Reissue No. 13766, issued July 7, 1914, owned by the Macbet-Evans Glass Co. The term of the agreement was from the date thereof until January 1, 1918:

* * * provided, however, that if prior to January 1, 1918, (a) a final decree in favor of the Macbeth-Evans Glass Company shall be entered in any of the suits now pending, in which the General Electric Company is defendant, or in which The Union Stopper Company is defendant, or in which the Max Schaffer Company is defendant, and if on appeal therefrom, the same shall be affirmed; or, (b) the bill in any of said cases shall be dismissed and on appeal, the decree shall be reversed and the patent held valid; or, (c) if both the said General Electric Company, and the said Union Stopper Company, shall take a license under the said Macbeth Patent; then, and in any such event, the term of this agreement shall extend to the expiration of the said Macbeth Patent, Reissue No. 13,766; provided, however, that in case said Macbeth Patent Reissue No. 13,766 shall be held invalid by a court of final jurisdiction, or by any court from which no appeal is taken, this agreement shall thereupon become valid.

The consideration for the license was the payment by the taxpayer of royalties each month to the licensor, such royalties being certain percentages of the aggregate amount of the selling prices of the goods manufactured under the patent. On January 27, 1916, a decree was entered in the suit pending between the Macbeth-Evans Glass Co. and the General Electric Co. in favor of the General Electric Co., holding that the patent in question was void. *Macbeth-Evans Glass Co.* v. *General Electric Co.*, 231 Fed. 183. The taxpayer paid certain royalties under its contract with the Macbeth-Evans Glass Co. Under date of February 24, 1916, it wrote to the Macbeth-Evans Glass Co. as follows:

Regarding our notes which you hold as well as the claim against us for accruing royalties, in view of the recent decision of the United States District Court of the Northern District of Ohio, Eastern Division, #303 Equity, in which suit you are the plaintiff and the General Electric Company is the defendant, we beg to advise you that our present attitude is that we are not indebted to you for royalties and that we must refuse to pay the notes because of there being no consideration for the same.

In the event of your appealing the case mentioned and ultimately establishing the validity of the patent, our present attitude would of course be changed accordingly, but under present circumstances we are constrained to deny liability on the notes and under the contract dated December 31, 1915.

In accordance with the notification contained in the above-quoted letter, the taxpayer made no further payments of royalties to the Macbeth-Evans Glass Co.

The Macbeth-Evans Glass Co. took an appeal from the decision of the District Court in its suit against the General Electric Co. to

the Circuit Court of Appeals, Sixth Circuit, and the decision of the lower court was affirmed by the higher court on November 6, 1917. *Macbeth-Evans Glass Co.* v. *General Electric Co.*, 246 Fed. 695.

The Macbeth-Evans Glass Co. did not acquiesce in the refusal of the taxpayer to pay royalties under the contract of December 31, 1915, and brought suit in assumpsit against it for breach of contract. On November 26, 1919, the court directed the jury to return a verdict for the plaintiff in the amount of $42,523, and the verdict was returned accordingly. On May 25, 1920, the court entered judgment on the verdict. The taxpayer took an appeal to the Circuit Court of Appeals, but before any decision was rendered on the appeal the case was settled out of court, the taxpayer paying in 1921 to the Macbeth-Evans Glass Co. the sum of $25,000 in compromise of all claims of the latter company. The appeal was dismissed under date of May 20, 1921.

The taxpayer kept its books of account on the accrual basis. Notwithstanding its refusal to pay royalties to the Macbeth-Evans Glass Co. in accordance with the terms of its contract with that company, it computed the royalties which it was obligated to pay daily and entered the amounts on its books at the end of each month as an accrued liability. The royalties were thus accrued until the date of the decision by the Circuit Court of Appeals in the case of *Macbeth-Evans Glass Co.* v. *General Electric Co., supra.* Deductions on account of these accrued royalties were taken in the original income-tax returns filed by the taxpayer for the years 1916 and 1917. The reserve for the royalties accrued but not paid, as shown by the taxpayer's income-tax return for 1917 at December 31, 1916, was $23,832.10 and at December 31, 1917, $38,884.12.

In 1919 the taxpayer was advised by tax counsel, who were employed to go over its tax returns and to advise it with respect to making its income-tax return for 1919, that it should not have claimed deductions from gross income for the years 1916 and 1917 in respect of royalties accrued but not paid, but that it was entitled to deduct from gross income for the year 1919 the amount of the verdict of the jury against it for breach of contract, which verdict was rendered at the direction of the court on November 26, 1919, in the sum of $42,523. Acting upon this advice, the taxpayer filed amended income-tax returns for 1916, 1917, and 1918 (since the amount of its invested capital was changed for 1918) and paid additional taxes shown to be due for those years. It deducted from gross income for the year 1919 the amount of the jury verdict against it, namely, $42,523. The Commissioner disallowed the deduction of the last-named amount from the gross income shown

on its income-tax return for 1919, which is the principal cause of the deficiency determined for that year.

3. In 1913 or 1914 the taxpayer took out an insurance policy for the benefit of itself upon the life of its president, Harry Northwood. The taxpayer paid the premiums upon the policy. Harry Northwood died in 1919 and the taxpayer received the proceeds of the policy, namely, $25,222.36. In its income-tax return for 1919 it included this amount in its gross income. In its petition it alleges error in so doing.

4. Prior to 1918 the taxpayer never charged off from the book value of its assets any amount for depreciation of depreciable assets. It had been its policy to charge the cost of additions, renewals, replacements, and repairs to general expense. There were some few instances to the contrary. In one case an addition costing $6,500 was capitalized. Large additions had been made to the plant, however, which had never been capitalized. The production of the plant in 1918 and 1919 was practically three times the production at the date of organization in 1906. The plant was kept in good working condition from the time of its organization to the end of the taxable years herein involved. The earlier books of the company have all been destroyed. The taxpayer has no original vouchers back of the last three or four years. All of such vouchers and records were burned up in 1918, at a time when the sample room was extended and the value of the records was not realized by the person who caused them to be destroyed. In 1918 an examination of records was made for the purpose of determining the cost of additions, renewals, and replacements, which had been charged to expense, and it was determined that the cost for the years 1914 to 1917, inclusive, was

| | |
|---|---:|
| 1914 | $17, 668. 36 |
| 1915 | 11, 871. 00 |
| 1916 | 20, 158. 00 |
| 1917 | 18, 403. 00 |
| Total | 68, 100. 36 |

The amount shown for 1914 included the cost of a new moulding shop.

5. In his audit of the taxpayer's returns for 1918 and 1919, the Commissioner reduced the taxpayer's reported invested capital in the amount of $33,182.74, to cover alleged depreciation of plant for years prior to 1918, and did not increase the invested capital shown on the original return to the extent of $38,884.12, the amount of the reserve for royalties shown by the taxpayer's books of account at December 31, 1917.

OPINION.

SMITH: The taxpayer alleges errors by the Commissioner in the determination of deficiencies in income and profits tax for 1918 and 1919.

1. It is alleged that the Commissioner erred in disallowing the deduction from gross income of the year 1919 of $42,523, representing the amount which the District Court for the Northern District of West Virginia directed a jury to return against the taxpayer in a suit brought against it by the Macbeth-Evans Glass Co. The taxpayer contends that it erroneously deducted from gross income in its income-tax returns for 1916 and 1917 royalties accrued upon its books of account in and for those years, and that the amount of the verdict of the jury returned on November 26, 1919, was an accrued liability of 1919 and a proper deduction from gross income of that year. Under its theory of the case there was no accrual of royalties against it for the years 1916 and 1917, but there was an accrual of a liability against it in 1919 of $42,523, the amount of the verdict of a jury in a suit brought against it by the Macbeth-Evans Glass Co., which verdict matured in a judgment against it in 1920 for the amount of $42,523, and that when this judgment was settled by the payment by it to the Macbeth-Evans Glass Co. of $25,000 in 1921, it realized taxable income in 1921 of $17,523, being the difference between the judgment of the court and the compromise. The Commissioner's position is that the royalties were properly accrued by the taxpayer in 1916 and 1917 and that deductions therefor were properly taken by the taxpayer in its income-tax returns for those years; that adjustment on account of the settlement should be made in 1921, when the liability was compromised for less than the reserve set up to meet the liability; that in no event was there an accrual of a liability constituting a legal deduction from gross income in 1919.

The taxpayer kept its books of account upon the accrual basis. In 1916 and 1917 it accrued the amount of the royalties which it was obligated to pay to the Macbeth-Evans Glass Co. in accordance with the terms of its contract with that company dated December 31, 1925. If it had paid the royalties to the licensor monthly as it had agreed to make payment there could be no question but that the amounts paid were legal deductions from gross income. Under its contract with the licensor, the taxpayer had no means of recovering back from the licensor the royalties which it had paid upon glass manufactured under the Letters Patent Reissue No. 13,766. The contract with the Macbeth-Evans Glass Co. became void on November 6, 1917, the date when the Circuit Court of Appeals for the Sixth Circuit affirmed the decision of the lower court in *Macbeth-Evans*

*Glass Co.* v. *General Electric Co.*, 246 Fed. 695; the royalties which the taxpayer accrued upon its books of account in 1916 and 1917 were legal deductions from the gross income of those years and of no other years. It is true that the facts in the instant case are materially different from those before the Supreme Court in *United States* v. *Anderson*, 269 U. S. 422. In that litigation it was not denied by the taxpayer that its method of keeping its accounts and setting up a reserve for munitions taxes reflected its true income for 1916, the year for which the reserve was set up, or that its amended return on that basis actually reflected its income and profits for that year. In the instant case the taxpayer contends that the reserve set up for royalties for the years 1916 and 1917 were not true accrued expenses of those years. This, however, is based upon hindsight and not upon foresight. The District Court for the Northern District of West Virginia, in the suit brought against the taxpayer by the Macbeth-Evans Glass Co., directed the jury to find for the plaintiff under the terms of the contract which the taxpayer had with the plaintiff, and which was dated December 15. So far as the litigation shows, the royalties were properly accrued upon the taxpayer's books of account. The mere fact that the liability for the royalties and the liability under the judgment of the court was settled in 1921 for less than the amount of the royalties accrued affords no basis for the contention that the royalties did not accrue during the years 1916 and 1917. The fact that the jury returned a verdict against the taxpayer in 1919 for breach of its contract did not constitute the amount of the verdict an accrued liability of that year. The taxpayer did not acquiesce in the verdict and indeed it did not become the decision of the court until 1921. The taxpayer appealed from such decision of the court and the litigation was finally settled in 1921 for an amount less than the basic judgment. In our opinion there was no accrual of a liability of any part of the amount of the verdict during the year 1919.

2. The taxpayer alleges that it erred in including in its gross income for the year 1919, $25,222.36, which represented the proceeds of a life insurance policy on the life of Harry Northwood, its president, who died in 1919. This point must be decided in favor of the taxpayer upon the basis of *United States* v. *Supplee-Biddle Hardware Co.*, 265 U. S. 189.

3. Although the taxpayer was organized in 1906, it never charged off any amount for depreciation of depreciable assets prior to 1918. By reason of this fact the Commissioner, in computing the taxpayer's invested capital for 1918 and 1919, reduced the invested capital shown upon the return in the amount of $33,182.74 to cover alleged depreciation of plant for years prior to 1918. The taxpayer alleges

error in this regard. The original records of the taxpayer for the years prior to 1918 have through accident, as indicated in the findings of fact, been destroyed. It appears, however, that it had been the practice of the taxpayer to charge most of the cost of improvements, renewals, replacements, and repairs to expense prior to 1918; that the taxpayer's plant had been well maintained and extended, and it also appears that, for the four years prior to 1918, improvements costing $68,100.36 had been charged to expense. The cost of such improvements was in no wise reflected by the taxpayer's capital account on its books. It is true that certain additions to the plant in the past had been capitalized, but it is equally true that the charging to capital of the cost of improvements was the exception rather than the rule. We conclude from the evidence before us that actual depreciation sustained during the years prior to 1918 had been more than offset by the cost of improvements, renewals, and replacements charged to expense. We are, therefore, of the opinion that the true earned surplus of the taxpayer at December 31, 1917, was not less than that shown by the taxpayer's books of account so far as relates to depreciation of depreciable assets, and that the reduction of invested capital made by the Commissioner in the amount of $33,182.74 to care for depreciation not shown to have been charged off on the taxpayer's books of account was in error.

4. With respect to the invested capital, the taxpayer also alleges that the Commissioner should include in invested capital for 1918 and 1919 $38,884.12 reserve for royalties shown upon its books of account at December 31, 1917,—this on the ground that the reserve was not a true liability and was simply a part of the taxpayer's surplus. We have indicated above, however, that in our opinion the royalties were properly accrued for the years 1916 and 1917. We think, therefore, that the taxpayer is not entitled to the inclusion in its invested capital for 1918 and 1919 of the $38,884.12 in question.

5. The taxpayer alleges error on the part of the Commissioner in the computation of its invested capital for 1918 and 1919 by reason of the fact that he reduced the surplus at the beginning of each year by prorating the 1917 and 1918 income and profits tax amounting to $11,024.27 and $23,391.12, the prorated amounts being $6,040.70 and $9,885.08, respectively. This claim is based upon the decision of the Board in *Appeal of Guarantee Construction Co.*, 2 B. T. A. 1145. This question has, however, been settled adversely to the taxpayer by section 1207 of the Revenue Act of 1926. *Appeal of Russel Wheel & Foundry Co.*, 3 B. T. A. 1168.

*Order of redetermination will be entered on 15 days' notice, under Rule 50.*