## APPEAL OF H. T. CUSHMAN MANUFACTURING CO.

Docket No. 2143.  Submitted April 16, 1925.  Decided June 11, 1925.

1. Additional compensation fixed and paid in September, 1919, for services rendered in 1918 disallowed.  Additional compensation regularly fixed and paid within the year allowed.

2. Taxpayer has established its right under section 327 of the Revenue Act of 1918 to have its profits tax computed under section 328 of that Act.

*William W. Johnston, Esq.*, for the taxpayer.
*A. H. Fast, Esq.*, for the Commissioner.

Before SMITH, LITTLETON, and TRUSSELL.

This appeal is from a determination by the Commissioner of a deficiency in income and profits taxes for the years 1919 and 1920, in the amount of $8,280.87.  The deficiency arises from the exclusion from invested capital of $57,158.30, representing appreciation of assets credited to surplus as the result of an appraisal; the failure to include in invested capital for 1920 the amount of $5,800 added to the taxpayer's income for the year 1919; the increase of income for 1920 by $750.15, representing Federal taxes for the year 1917 paid in 1918 and deducted from income in that year; and the failure to allow a deduction of $3,800 as additional salaries for the year 1919.

### FINDINGS OF FACT.

The taxpayer is a corporation organized in the year 1899 under the laws of the State of Vermont, with its principal offices at North Bennington, Vt.  It is and has been since its incorporation engaged in the manufacture of smoking stands and humidors, breakfast sets, and stands.  It succeeded to the business theretofore conducted and owned individually by H. T. Cushman.  Its stock was closely held, and during the years involved in this appeal practically all of it was owned by H. T. Cushman, president, and his three sons—W. C. H. Cushman, treasurer; John H. Cushman, vice president and salesman; and F. B. Cushman, a director and salesman—a majority of the capital stock being owned by H. T. Cushman, who really controlled the company and fixed the salaries paid to his sons.

In the year 1892, H. T. Cushman leased from the Park estate for a term of three years an abandoned mill building in North Bennington, containing certain machinery, together with certain tenement houses and a mansion house, for a stipulated rental and an option to purchase the property for $14,000.  This lease was renewed in 1895 or 1898, and again in 1899, and upon the incorporation of the business in 1899 it was turned over to the corporation and renewed by

it from time to time, with certain modifications, the principal one being the increase of the option purchase price to $18,200 to cover certain improvements made by the lessor. The mill property in question when first leased by H. T. Cushman was of little value, having been abandoned for many years. During the years 1892 to 1910, inclusive, Cushman and the corporation spent large sums of money in repairing and improving the property and in installing new machinery and equipment. The amount of these expenditures, however, owing to the absence of records, can not be determined accurately, with the exception of the sum of $10,300 spent during the years 1892 to 1909, the exact date being unknown, on a new sprinkler system, a fire engine, improvements on a residence connected with the mill property, and the installation of an elevator, electric wiring, steam pipes, etc. These expenditures were not capitalized, but were charged to expense.

In the year 1910 the taxpayer exercised its option and purchased the mill property and appurtenances for $18,200 cash. Between the date of purchase and March 1, 1913, an appraisal was made of the taxpayer's assets which established a fair value therefor, $57,158.30 greater than that at which they had been carried on the taxpayer's books. They were accordingly written up on the taxpayer's books to the value shown by the appraisal, the surplus being credited with $57,158.30, the amount of appreciation resulting therefrom. The value so established was thereafter taken as the basis for computing exhaustion, wear and tear of the assets, and creating reserves therefor.

The regular salaries paid by the taxpayer to H. T., W. C. H., J. H., and F. B. Cushman for the years 1918 and 1919 were as follows:

|  | 1918. | 1919. |
| --- | --- | --- |
| H. T. Cushman | $3,500.00 | $10,000.00 |
| W. C. H. Cushman | 3,000.00 | 7,500.00 |
| John H. Cushman | 3,000.00 | 7,500.00 |
| F. B. Cushman | 1,241.67 | 6,998.69 |

On September 25, 1919, H. T. Cushman caused to be credited to the accounts of himself and his sons, as "Special allowance for 1918," the following amounts:

| H. T. Cushman | $500 |
| --- | --- |
| W. C. H. Cushman | 500 |
| J. H. Cushman | 500 |
| F. B. Cushman | 300 |

These amounts were charged to surplus and were not charged to expense on the taxpayer's books.

On December 30, 1919, the directors of the corporation voted additional compensation as follows:

Voted that company accept J. H. Cushman's offer to sell 10 shares of his stock at par, and same be put into the Treasury stock. It was further voted that the $1000 of Treasury stock be issued to W. C. H. Cushman, and $1000 of Treasury stock to F. B. Cushman for additional compensation for services rendered.

Each. of the persons named devoted his entire time to the affairs of the taxpayer. The regular salaries paid by the taxpayer for the year 1920, and allowed by the Commissioner, were:

| | |
|---|---|
| H. T. Cushman _____ | $26,500 |
| W. C. H. Cushman_____ | 16,000 |
| J. H. Cushman _____ | 16,000 |
| F. B. Cushman _____ | 16,000 |

The taxpayer's net income as determined by the Commissioner was $30,836.31 in 1919 and $52,159.36 in 1920. Invested capital as determined by the Commissioner is $107,675.89 for 1919 and $125,862.09 for 1920.

The taxpayer was indebted to its officers for borrowed money in the amount of $7,640.68 on December 31, 1918; $13,035.17 on December 31, 1919; and $45,122.28 on December 31, 1920.

Upon audit of the returns for the years 1919 and 1920 the Commissioner reduced the taxpayer's invested capital for those years by $57,158.30, the appreciated value of its assets due to the appraisal mentioned; increased its income for the year 1919 by the amount of $750.15, Federal tax paid by it in 1918 and deducted as an expense of that year; and refused to include in invested capital for the year 1920 $5,800 which had theretofore been added to taxpayer's income for the year 1919. Upon the basis of these adjustments a deficiency in taxes was determined in the amount of $4,715.50 for the year 1919 and $3,565.37 for the year 1920.

DECISION.

The deficiency should be recomputed in accordance with the following opinion. Final determination will be settled on consent or on 10 days' notice, in accordance with Rule 50.

OPINION.

LITTLETON: The taxpayer contends that the Commissioner erred in determining its invested capital for the years 1919 and 1920, in increasing its income for the year 1920 by $750.15, and in refusing to allow as a deduction from gross income for the year 1919 the amount of $3,800, paid to its officers in that year as additional compensation. The taxpayer also contends that because of the fact that no records are available to establish the exact amount spent in improving and enlarging its factory facilities prior to 1910, its invested capital for 1919 and 1920 can not be correctly determined, and that,

therefore, it is entitled to have its taxes computed under section 328 of the Revenue Act of 1918.

The Commissioner admitted by his answer that the item of $750.15 was improperly added to the taxpayer's income for the year 1920, and that invested capital for that year, as computed, should be increased by $5,800. This leaves for consideration only the question as to whether or not the additional salaries claimed for the year 1919 should be allowed, and the issues arising from the exclusion from invested capital for the years 1919 and 1920 of the amount of $57,158.30.

A taxpayer acquiring assets for cash is not entitled to include them for purposes of invested capital at more than their cost. Appreciation in value of such assets occurring after they are acquired may not be reflected in invested capital. La Belle Iron Works v. United States, 256 U. S. 377. The taxpayer under its option acquired the mill and appurtenances involved herein at a cost of $18,200, which, however, was not intended by the parties to the conveyance to include the improvements made on the property by the taxpayer, or by H. T. Cushman. The evidence in this appeal convinces us that Cushman and the taxpayer prior to 1910 spent large amounts of money in adding to and improving the mill, the tenement houses, machinery, etc., connected therewith; also, that the property had in 1910 a fair value $57,158.30 greater than was reflected by the books of the corporation. What part of this increased value was due to expenditures made by the taxpayer and Cushman and what part to other causes we are unable to determine from the evidence. The taxpayer's records for the years prior to 1910 are, unfortunately, few and incomplete, and from them it is possible to establish expenditures of only $10,300 for the purposes named. That amount was spent for improvements clearly of a capital nature, between the years 1892 and 1910, and was charged to expenses, but there is no evidence to show in what particular years the expenditures were actually made, or what amount was spent in any one year. If it were possible to fix the dates of the various expenditures which make up the total amount of $10,300, we think that the taxpayer should be allowed to include in invested capital for 1919 and 1920 the depreciated cost as of those years of the assets acquired for the $10,300, but from the evidence submitted there is nothing from which the Board can determine any amount that should be so included. The taxpayer, however, since the appraisal of its assets, has computed deductions for exhaustion, wear and tear upon the appreciated values established by the appraisal, and has established depreciation reserves upon that basis. It has therefore actually realized through the depreciation deductions and reserves a part of the appreciation set up on its books. It accordingly follows that the

Commissioner should not have excluded from the taxpayer's invested capital for 1919 and 1920 the entire amount of the appreciation, but only that part thereof which had not been actually realized through deductions for depreciation.

With reference to the extra compensation in the amount of $1,800 paid by the taxpayer to its officers on September 25, 1919, and claimed as a deduction from gross income in that year, the evidence shows that this amount was paid for services rendered in the year 1918 and was in no respect compensation for the year 1919. The Commissioner therefore correctly disallowed the amount as a deduction for 1919. The $2,000 additional salary voted on December 30, 1919, was clearly for services rendered during the taxable year. It appears from the evidence that the additional salaries authorized for 1919, together with the regular salaries, were reasonable in amount, in view of the services rendered by the officers to whom they were paid. We consider, therefore, that the taxpayer should be allowed to deduct the amount of such additional salaries as an expense in that year.

The taxpayer claims that because the amounts spent by it and by H. T. Cushman on the mill property during the period 1892 to 1910 can not now be established and accurately reflected in invested capital, it is entitled to special assessment for the years 1919 and 1920 under section 328 of the Revenue Act of 1918. Taxpayer has shown to the satisfaction of the Board that the property acquired had at that time and subsequently an actual value greatly in excess of the amount reflected by its books but, due to the absence of records, it is impossible to determine accurately the amount of expenditures made by the taxpayer and Cushman of a capital nature but which were not capitalized. We are of the opinion from the evidence in this appeal that the taxpayer has brought itself within the provisions of section 327 of the Revenue Act of 1918 and is, therefore, entitled to have its profits tax computed under the provisions of section 328 of that Act.

The deficiency will be finally determined by the Board upon recomputation by the Commissioner in accordance with the foregoing. The determination of the Commissioner under the provisions of section 328 will be adopted as final, no evidence of comparatives having been submitted by the taxpayer.