## WISE REALTY CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3770.   Promulgated December 14, 1926.

1. Salaries for the year 1919 were neither paid nor accrued during that year and are not deductible under section 234(a) (1) of the Revenue Act of 1918.

2. As to other items in controversy, action of the Commissioner has been approved as correct for lack of evidence to the contrary.

*H. H. Shelton, Esq.*, for the petitioner.
*Bruce A. Low, Esq.*, for the respondent.

The Commissioner determined the following deficiencies:

| | |
|---|---:|
| For 1919 | $6, 121. 80 |
| For 1920 | 2, 174. 04 |
| For 1921 | 1, 226. 60 |
| Total | 9, 522. 44 |

For 1918 there was no tax due and for 1922 there was an overassessment.

Not all of the total deficiency is in controversy. The petitioner alleged that in arriving at the gross profit from the sale of lots, the

Commissioner did not deduct a sufficient amount for the cost of the lots; that he placed an excessive value on the unsold land and had not considered lands used in streets and alleys in his computation of gross profit; that he erred in refusing to allow a deduction of $10,400 in 1919, as claimed on an amended return for that year, representing accrued salaries of officers for services rendered in 1919 and prior years; and that he erroneously increased the taxable income for the year 1921 by the sum of $634.44.

### FINDINGS OF FACT.

The petitioner was incorporated under the laws of Virginia in August, 1913, with its principal office at Bristol, Va. The original stockholders were four personal friends and business associates.

In 1913 the corporation purchased 331 acres of land adjacent to the town of Appalachia, Va., from the Interstate Coal & Iron Co. for $50,000. Part of the land is in a flat, narrow valley and the remainder is on the sides of hills and mountains. The Powell River runs through the land and occupies 13 of the total number of acres. There is no valuable coal deposit in the land.

One hundred and eighteen acres were subdivided into 444 town lots with the appropriate streets and alleys. All of the flat land, amounting to 30 or 35 acres, was included in this subdivision. Some of the lots were on steep hills. Few lots were sold until the year 1918, and most of the lots were sold in the years 1919 to 1921, inclusive. In many of the sales the petitioner received small initial payments and the balance at intervals thereafter.

Appalachia is a town of 2,800 people, situated in the Virginia coal fields. It is served by three railroads. The demand for the above lots decreased as the coal operations in the vicinity of the town decreased. Since 1922 a few lots have been sold, but the market has been inactive. Each lot sold since 1922 has brought $200 or more, but these were the best lots unsold at the the time. About one-half of the 444 town lots have been sold.

The revenue agent, upon the basis of whose report the deficiency was determined, assigned a value of $10 an acre to the unsold acreage. The portion of this land situated upon the mountain sides had a value of not more than $1 an acre.

J. H. McCue, president, did the office work, wrote all deeds, carried on all correspondence, and wrote the minutes of all meetings. He was assisted by his secretary. J. A. Guntner had direct charge of subdividing the land, of making the improvements, and of selling the lots. Neither of the other two stockholders ever did any work in connection with the corporation's business. The four stockholders had, from the year of incorporation, an informal understanding that

Guntner and McCue should receive reasonable salaries for their services, but no salaries were paid and no entries in regard to salary were made on the books or on the minutes until July, 1919, when the minutes show that salaries were fixed at $1,000 a year for J. A. Guntner and $500 a year for J. H. McCue. No salaries were paid in 1919, but in a later year salaries for the years 1913 to 1919, inclusive, in the amount of $10,400, were entered in the books as of 1919.

### OPINION.

MURDOCK: Salaries for Guntner and McCue for the year 1919, totaling $1,500, were reasonable allowances for personal services actually rendered, but were not paid in the taxable year and are not proper deductions from gross income in that year in the absence of satisfactory proof that the books were kept on the accrual basis and that the amount of the salaries was entered thereon in 1919, from which we could conclude that the amount was accrued in that year. The remaining $8,900 was specifically for salaries for prior years, was unrelated to compensation for services rendered during the year 1919, and is disallowed as a deduction in that year. *Appeal of H. T. Cushman Mfg. Co.*, 2 B.T.A. 39; *Appeal of Columbia Textile Co.*, 2 B.T.A. 472; *Appeal of Green Oil Soap Co.*, 3 B.T.A. 467.

The Commissioner admitted that in his calculation of the deficiency "the cost of lots" for the year 1919 should be $17,646.72, and that for the year 1921 it should be $8,199.49, instead of the figures used. These errors should be corrected in the redetermination of the deficiency in accordance with this opinion.

We are unable to find any satisfactory evidence to convince us that the determination of the Commissioner was otherwise in error. There is not sufficient data in evidence from which we can compute a cost of the lots in excess of that computed by the Commissioner, nor from which the Commissioner's computation can be tested. So far as the record discloses, the unsold land consists of about 200 acres, worth not more than $1 an acre, and an unknown number of lots, worth an unknown amount. We are in ignorance of the value which the Commissioner placed upon the unsold land. How, then, can we say that it was excessive, or how can we say what the correct amount should be? There was no evidence offered in regard to the item of $634.44, and that offered to prove that the Commissioner neglected to consider land used for streets and alleys was not convincing.

*Judgment will be entered after 15 days' notice, under Rule 50.*