## APPEAL of GUARANTEE CONSTRUCTION CO.

Docket Nos. 1828, 1848.　Submitted April 28, 1925.　Decided October 30, 1925.

> 1. A corporation which in 1909 purchased stock of another corporation and immediately sold it at cost, on condition that if the stock should not prove to be a good investment it would return the purchase price and take back the stock, is not entitled upon the repurchase in 1918 of the stock of such corporation, which at that time was still in existence, to deduct as a loss under section 234(a) the amount refunded to the purchasers under the conditional sale.
>
> 2. Operating deficits during the pre-war period may not be deducted from paid-in capital in determining the average pre-war invested capital for the purpose of computing the war-profits credit.
>
> 3. Surplus at the beginning of any taxable year may not be reduced in computing invested capital on account of taxes payable within the year upon the income of the preceding taxable year.
>
> 4. Upon the evidence in this appeal, held, that taxpayer is entitled to have its profits taxes for the calendar years 1918 and 1919 computed under the provisions of section 328 of the Revenue Act of 1918.

*J. Marvin Haynes* and *Chester J. McGuire, Esqs.*, for the taxpayer.

*A. H. Fast, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, and TRUSSELL.

These appeals involve deficiencies in income and profits taxes for the years 1918 and 1919 in the amounts of $5,201.84 and $1,212.97, respectively, arising from (1) the disallowance of a deduction as a loss in 1918 of $6,400 claimed to have been sustained through a repurchase in 1918, under a conditional sale, of stock of another

corporation at the price for which the stock was originally sold in 1909; (2) the reduction of the taxpayer's invested capital for the year 1919 in the amount of $4,586.25, on account of the additional taxes determined to be due for the year 1918 involved in this appeal; (3) the reduction by the Commissioner of the taxpayer's war-profits credit for the years 1918 and 1919 in the amount of $1,904.47 in each year—the latter year being involved by reason of the existence of certain Government contracts; and (4) the refusal of the Commissioner to compute the profits tax for the years 1918 and 1919 under section 328 of the Revenue Act of 1918.

A separate deficiency letter was mailed to the taxpayer for each year. By agreement the appeals were consolidated and heard together.

### FINDINGS OF FACT.

The taxpayer is a New York corporation engaged in the business of designing and constructing equipment for the handling and storage of coal, ore, and other bulk materials. Practically all of the capital stock of the corporation is, and has been since its organization, owned by its four officers, each of whom is an experienced engineer and is familiar with the kind of business in which the taxpayer is engaged. The success of the corporation is largely dependent upon the personal ability of its officers, for the reason that the principal function of the company is discharged by them, namely, the study of labor-saving problems in industrial plants and the designing of equipment for the solution of such problems. The element of construction of equipment is secondary to the work of analyzing the problem and designing the equipment, since the construction follows only in the event that the analysis of the problem and the design of the equipment are satisfactory to the customers. The corporation does no construction work upon designs and specifications prepared by other engineers; frequently, however, the taxpayer's designs are accepted and other concerns are employed to construct and install the equipment so designed.

In the year 1909 the taxpayer purchased a number of shares of stock of the Darley Engineering Co., and within a short time sold them to friends of the officers of the corporation for $6,400. At the time of the sale the taxpayer's officers assured the purchasers that the stock was a good investment and they purchased it forthwith without making any investigation as to its value. Within a few months it was found that the investment was not a good one, whereupon the taxpayer, through its officers, assured the purchasers of the stock that it would redeem or repurchase the stock at the price paid by them as soon as its financial condition should warrant it in so doing, in order that they might not lose anything by the

transaction. During the year 1918 the taxpayer took back the stock of the Darley Engineering Co., and issued to the holders in exchange therefor 64 shares of its preferred stock of the par value of $6,400. At the time of the sale in 1909 and on the date of repurchase of the stock, the Darley Engineering Co. owed the taxpayer a large amount of money, and, although this company had not been engaged in business for several years prior to 1918, it had not been dissolved. In its return for the year 1918 the taxpayer deducted from gross income $6,400 as a loss on the conditional sale in 1909 and repurchase in 1918 of this stock.

The taxpayer's outstanding capital stock was $57,000 during the year 1911; $62,375 during the year 1912; and $64,000 during the year 1913. At the beginning of the year 1911 it had an operating deficit of $20,427.42; at the beginning of the year 1912, an operating deficit of $15,392.59, and at the beginning of the year 1913 an operating deficit of $21,312.59, an average operating deficit of $19,047.56 for the three years. The average capital stock outstanding for the years 1911, 1912, and 1913 was $61,291.66. In computing its war-profits credit taxpayer used as its invested capital for the pre-war period the average amount of outstanding capital stock for the years 1911, 1912, and 1913, less the average of the operating deficits existing on January 1, 1911, January 1, 1912, and January 1, 1913.

The taxpayer had a net income of $5,208 for the year 1911, a net loss of $5,927.90 for the year 1912, and a net income of $14,965.05 for the year 1913, or an average net income of $4,748.40 for the pre-war period.

Upon audit of the taxpayer's returns for the years 1918 and 1919 the Commissioner, in computing the war-profits credit under section 311 of the Revenue Act of 1918, determined that its average invested capital for the pre-war period was $61,291.66, disallowed the deduction of $6,400 taken by the taxpayer as a loss in 1918 on the repurchase of the shares of stock of the Darley Engineering Co., and deducted $4,586.25 from the taxpayer's invested capital for the year 1919 on account of the additional income and profits tax proposed to be assessed for the year 1918.

#### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on consent or on 15 days' notice, under Rule 50.

#### OPINION.

LITTLETON: The taxpayer contends that the Commissioner erred: (1) In disallowing the deduction of $6,400 taken as a loss on the

repurchase of the stock of the Darley Engineering Co. in the year 1918; (2) in reducing its invested capital for the year 1919 by reason of the additional tax determined to be due for the year 1918; (3) in computing its war-profits credit for the years 1918 and 1919; and (4) in refusing to compute the profits tax for the years 1918 and 1919 under section 328 of the Revenue Act of 1918. The taxpayer alleged in its petition, as a reason for special assessment, that a large part of its income for the years involved was due to the services rendered by its four officers who are the owners of practically all of its capital stock; that their professional skill and reputation could only be to a slight extent measured by the salaries paid to them, and could in no way be valued for the purpose of computing invested capital, and that, as a result of this, an abnormal condition affecting invested capital existed which entitled it to have its profits taxes for the years 1918 and 1919 computed under section 328 of the Revenue Act of 1918. Taxpayer further pointed to the fact that the profits taxes for each of the years 1918 and 1919, as determined by the Commissioner, were more than 33 per cent of its net income.

At the hearing the taxpayer moved that the Board disapprove the deficiencies involved in the appeal because of the failure of the Commissioner to comply with a subpoena issued by the Board requiring him to produce certain records with reference to the taxpayer's application for the computation of its profits taxes under section 328 of the Revenue Act of 1918. The taxpayer for the same reason further moved that the Board deny the Commissioner the privilege of being represented at the hearing. It is not necessary to enter into a discussion of these motions. We think they are not well taken and they are, therefore, overruled.

The first issue raised by the appeal relates to the loss of $6,400, claimed by the taxpayer to have been sustained in the year 1918 on the repurchase of stock of the Darley Engineering Co. The taxpayer purchased this stock in 1909 and immediately sold it to friends of its four officers. Within the year the stock was ascertained to be of less value than had been ascribed to it, and the taxpayer's officers, feeling that the taxpayer was morally, although not legally, obligated to save the purchasers from possible loss, agreed that the taxpayer would repurchase the stock as soon as its financial condition would permit it to do so. During the year 1918 the taxpayer took back the stock of the Darley Engineering Co., issuing in exchange therefor 64 shares of its stock having a par value of $6,400, the amount previously paid by the purchasers for the Darley Engineering Co.'s stock. Under these circumstances, we are unable to agree with the taxpayer that it suffered a deductible loss in that year. Upon the repurchase of the stock in question, it was in exactly the

same position as before it sold the stock in 1909. At the end of the taxable year 1918 the taxpayer was the owner of stock which it acquired in 1909 in a corporation which was still in existence and which had not disposed of its assets, and although that stock may have declined in value between 1909 and December 31, 1918, the taxpayer is not entitled to deduct a loss in respect of such decline. The conditional sale in 1909 and repurchase in 1918 was not a completed and closed transaction necessary to establish a deductible loss under section 234(a) of the Revenue Act of 1918.

The second issue presented by the record concerns the question of whether the Commissioner may reduce the taxpayer's invested capital for the year 1919 on account of the deficiency in tax determined to be due for the year 1918, the same deficiency being now before the Board on appeal. The taxpayer contends that the Commissioner was in error in reducing its invested capital for the year 1919 by allocating the deficiency determined in 1924, proportionately to the four installments of the tax originally paid in that year upon the return for the year 1918. In support of this contention taxpayer claims that the additional tax determined by the Commissioner subsequent to the filing of the return becomes due and payable upon notice and demand by the collector, and that, since the additional tax has not yet been assessed and payment demanded by the collector, it can not operate to affect the invested capital for the year 1919.

In support of his action in allocating the additional tax to the four installments in the computation of invested capital for 1919, the Commissioner contends that the correct tax for 1918 became due and payable at the time fixed for the payment of the four installments during the year 1919, as set forth in article 845 of Regulations 45, which provides—

\* \* \* Amounts payable on account of such taxes for the preceding year may be included in the computation of invested capital only until such taxes become due and payable. A deduction from the invested capital as of the beginning of the taxable year must therefore be made for such taxes or any installment thereof, averaged for the proportionate part of the taxable year after the date when the tax or the installment is due and payable.

In disposing of this issue we do not deem it necessary to pass upon the question as to when a deficiency in tax found to be due for any year becomes due and payable. We believe the correct answer to the issue confronting us must depend, in the last analysis, upon the answer to the broader question as to whether the Commissioner is justified under the statute in reducing the invested capital of any year by the amount of the income and profits taxes due for the preceding taxable year, averaged for the proportionate part of the year after the date when the tax or any installment thereof becomes due and payable.

Income and profits taxes are a current annual expense as much as taxes imposed by any State or any political subdivision thereof, not including taxes assessed against local benefits. The fact that they are specifically excluded from the deductions allowed by the statute in determining the taxable net income does not in the least change their character. As annual expenses they constitute for accounting purposes proper charges against the earnings of the year in which they become due and payable, and the payment thereof can have no more effect upon the invested capital of the year in which the payment is made than would the payment of any other operating expense.

Nor is the rule different in the event that the current earnings available at the date of payment of the tax or any installment thereof are insufficient to meet the required payment. By express provision of the statute the earnings of the current year are in no wise reflected in the current year's invested capital. It follows that if the expenses at any given date exceed the income so as to show an operating deficit at that date, invested capital is not affected.

Section 326 (d) provides that: "The invested capital for any period shall be the average invested capital for such period, * * *" and it might be urged that, in the event the tax for an earlier year paid in a later year exceeded the earnings of that year, the resulting impairment of surplus should be reflected in invested capital for the year in which such tax became due and payable. We believe, however, that full effect may be given to the above-quoted section without requiring such a construction. Additions to capital resulting from the issuance of additional stock for a valuable consideration or reductions of capital or surplus resulting from distributions to stockholders in excess of earnings, thereby producing impairments of surplus, are necessarily to be taken into consideration as bearing upon invested capital since they affect the capital actually embarked or left in the enterprise. Since this provision of the statute may thus be given full effect without involving adjustments of income or expense of the year, we are of the opinion that there is nothing in the statute which requires that the invested capital of a taxable year be reduced on account of the payment of income and profits taxes for the preceeding taxable year.

We conclude that, so far as article 845 of Regulations 45 and 62, promulgated by the Commissioner, requires that such reduction in the invested capital be made, such regulations are without statutory warrant and are invalid. Any part of the deficiency on appeal which is predicated upon the reduction of this taxpayer's invested capital for 1919 on account of income and profits taxes for the year 1918, whether paid in the year 1919 or forming a part of the deficiency for the year 1918, is erroneous and is disallowed.

The third point raised by the appeal relates to the taxpayer's war-profits credit for the years 1918 and 1919 under section 311 of the Revenue Act of 1918.   This section provides, among other things, that a corporation subject to the war-profits tax is entitled to a credit of " an amount equal to the average net income of the corporation for the pre-war period, plus or minus, as the case may be, 10 per cent of the difference between the average invested capital for the pre-war period and the invested capital for the taxable year." The " pre-war period " means the years 1911, 1912, and 1913.   Section 310, Revenue Act of 1918.   The Commissioner has taken as the taxpayer's invested capital for the years 1911, 1912, and 1913, the average amount of capital stock outstanding in those years.   There is no dispute as to the outstanding capital stock or as to the amount of the deficit in each of the years in the pre-war period.

Invested capital, within the meaning of section 326 of the Revenue Act of 1918, is the capital actually paid in to the corporation by the stockholders plus certain earned surplus and undivided profits.   The stockholders of the corporation originally paid in for its capital stock cash or tangible property of a total value equal to the par value of the stock issued.   The amount invested in the corporation was, therefore, equal to the par value of its capital stock.   While it is true that in this appeal the capital of the taxpayer was obviously impaired or depleted at the beginning of each of the years 1911, 1912, and 1913, to the extent of the deficit then existing, the amount invested in the corporation by the stockholders, however, remained unchanged.   It was still equal to the par value of the outstanding stock.   Section 326 of the Revenue Act of 1918 makes no provision for the reduction of invested capital of a corporation by reason of an operating deficit.   It provides, and we think with reason, that invested capital shall at all times include capital or surplus actually paid in.   Earned surplus and undivided profits, of course, may vary in amount from year to year.   We are of the opinion, therefore, that capital and surplus actually paid in remain part of the invested capital of a corporate taxpayer, except where such capital or surplus has been directly or indirectly returned to the stockholders.   Upon the facts in this appeal the Commissioner properly determined the taxpayer's average invested capital for the pre-war period.

The fourth issue has reference to the matter of assessment of the profits tax under the provisions of section 328 of the Revenue Act of 1918.   At the hearing and in the brief filed taxpayer contended that if its claim that the operating deficits in the years 1911, 1912, and 1913, should be held not to affect its average invested capital for the pre-war period, this, together with the fact that it had an average net income of only $4,748.40 for the pre-war period, and the

personal service rendered by the officers, results in a condition affecting invested capital for the years 1918 and 1919 which entitles it to have its profits taxes computed under the provisions of section 328. We are of the opinion that this contention of the taxpayer is well taken and that its profits taxes for the calendar years 1918 and 1919 should be computed under the provisions of section 328 of the Revenue Act of 1918.