ALL AMERICA CABLES, INC. (FORMERLY CENTRAL & SOUTH AMERICAN TELEGRAPH CO.), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MEXICAN TELEGRAPH CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 9092, 9093. Promulgated January 25, 1928.

*George E. Cleary, Esq.*, for the petitioners.
*George G. Witter, Esq.*, for the respondent.

## OPINION.

LITTLETON: Section 240 of the Revenue Act of 1918 requires the filing of consolidated returns by affiliated corporations, and further provides as follows:

(b) For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests.

It is petitioners' contention that for the period October 1, 1919, to December 31, 1919, the Central & South American Telegraph Co. owned or controlled substantially all of the stock of the Mexican

Telegraph Co., and that, therefore, the two corporations were affiliated. This contention was not presented to the Commissioner, but was fully covered by the evidence given at the hearing. This evidence shows that on October 1, 1919, the Central & South American Telegraph Co. owned directly 65.96 per cent of the stock of the Mexican Telegraph Co., and that the amount of stock owned directly increased rapidly during the balance of the year. On the same date the Central Company was the virtual owner of and controlled an additional 23.32 per cent of the stock of the Mexican Telegraph Co. through written contracts binding the stockholders of the Mexican Telegraph Co. to exchange such stock for stock of the Central & South American Telegraph Co. On October 1, 1919, therefore, the Central Company owned or controlled 89.28 per cent of the stock of the Mexican Company. By October 6, 1919, this percentage had increased to 91.16 per cent and by December 31, 1919, the company owned directly 96.36 per cent of the stock of the Mexican Company.

We think that it is not necessary to enter into any extended discussion of the question of affiliation between these companies for the period October 1, 1919, to December 31, 1919. In the circumstances of the case it must be held that the Central & South American Telegraph Co. owned or controlled substantially all of the stock of the Mexican Telegraph Co. during the period. The claim of the taxpayers for affiliation during this period is sustained.

The second question for consideration is whether the Commissioner was justified in eliminating from the surplus of each company at January 1, 1917, the amount of the Federal income tax payable upon income for the year 1916. In the case of the Central & South American Telegraph Co. the income tax payable for the year 1916 was $47,004.95. This tax became due and payable June 15, 1917. The company claims the right under Treasury Decision 2791 to include the $47,004.95 income tax in question in invested capital up to June 15, 1917; it claims that its invested capital for 1917 should be increased over the amount allowed by the Commissioner by $21,377.59, the prorated portion of the 1916 income tax. A similar claim is made for the Mexican Telegraph Co. and it is contended that its invested capital for 1917 is $8,570.38 in excess of that allowed by the Commissioner, said amount representing the 1916 income tax prorated to June 15, 1917.

The portion of Treasury Decision 2791, issued February 17, 1919, relied upon by the petitioners, reads:

For the purpose of determining invested capital under Title II of the Act of October 3, 1917, income and excess-profits taxes shall be deemed to have been paid out of the net income for the taxable year for which such taxes are levied. Amounts payable on account of income and excess-profits taxes for any year may be included in computing surplus and undivided profits for the suc-

ceeding year only for the proportionate part of the year represented by the period of time between the close of the taxable year and the date or dates upon which such taxes become due and payable.

It is contended by the petitioners that the above-quoted Treasury Decision 2791 was validated by section 1207 of the Revenue Act of 1926, which provides:

The computation of invested capital for any taxable year under the Revenue Act of 1917, the Revenue Act of 1918, and the Revenue Act of 1921, shall be considered as having been correctly made,. so far as relating to the inclusion in invested capital for such year of income, war-profits, or excess-profits taxes for the preceding year, *if made in accordance with the regulations in force in respect of such taxable year applicable to the relationship between invested capital of one year and taxes for the preceding year.* (Italics ours.)

In the consideration of this issue it should be noted that both petitioners kept their books of account and made their returns for the years 1916 and 1917 upon the accrual basis. The income tax for 1916 was based upon the profits of that year. If the question were as to the date when the income tax for 1916 accrued we would be constrained to hold that such tax accrued at the end of 1916, since this was substantially the holding of the court in *United States* v. *Anderson* and *United States* v. *Yale & Towne Mfg. Co.*, 269 U. S. 422. The question there was whether a munitions tax imposed upon profits from the manufacture of munitions in 1916 was a legal deduction from gross income of the corporation paying the same in 1917, the corporation keeping its books of account and making its returns upon the accrual basis. The court, after quoting Treasury Decision 2433, promulgated January 8, 1917, held that the tax was not a legal deduction from the gross income of 1917, since it accrued upon the profits of 1916. It stated:

Only a word need be said with reference to the contention that the tax upon munitions manufactured and sold in 1916 did not accrue until 1917. In a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due; but it is also true that in advance of the assessment of a tax, all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it. In this respect, for purposes of accounting and of ascertaining true income for a given accounting period, the munitions tax here in question did not stand on any different footing than other accrued expenses appearing on appellee's books. In the economic and bookkeeping sense with which the statute and Treasury decision were concerned, the taxes had accrued. * * *

But we do not understand this to be the question which we are to decide, but rather what regulations were "in force" and, in effect, made a part of the statute by section 1207. At the time the Revenue Act of 1926 was enacted, Treasury Decision 2791 and article 845, Regulations 45, were in existence as regulations of the Treasury Department for the determination of invested capital with respect to

the effect of income and profits tax of a preceding year on the invested capital of the year in which such taxes become due and payable. At the time of the enactment of the Revenue Act of 1926, the *Yale & Towne* and *Anderson* cases had been decided by the Supreme Court. The effect of the decisions of the court was to cast doubt upon the rulings and decisions of the Treasury Department in permitting taxpayers to include a tax liability as a part of its invested capital from the end of the year for which levied until it became due and payable. The Board had also decided the *Appeal of Guarantee Construction Co.*, 2 B. T. A. 1145, and the *Appeal of Maritime Securities Co.*, 2 B. T. A. 188, which decisions were contrary to Treasury Decision 2791 and article 845, Regulations 45. At this time many returns for the years affected by these regulations had been audited and the statute of limitations had run against the collection of the taxes on many of these returns in which the taxpayer had received the benefit of these regulations. The Treasury Department, therefore, was faced with the proposition of reversing its existing practice with respect to returns which were not yet closed, which would have meant an inequitable situation for these taxpayers as compared with more fortunate taxpayers who had the benefit of existing regulations. Congress apparently recognized this condition in enacting section 1207, which removed the question from the field of controversy and validated existing regulations with respect thereto.

The first question, then, is not whether the regulations were correct, but whether those " in force " for 1917 permitted the inclusion in 1917 invested capital of 1916 income tax until such tax became due and payable in 1917. The only regulation to which our attention has been called, either by the respondent or petitioner, which provided for the computation in question, was Treasury Decision 2791, promulgated almost simultaneously with the enactment of the Revenue Act of 1918, under which article 845, Regulations 45 (Treasury Decision 2831), was promulgated. This Treasury decision has not been modified or revoked in so far as the question at issue is concerned. It was in force on February 26, 1926. Shortly after its issuance, an attack was made upon its validity and the Commissioner in upholding this regulation said:

The amount of these taxes for any year can not, therefore, after the conclusion of such year be considered as a part of the surplus, but is rather in the nature of a liability, and if this regulation is open to criticism at all, such criticism might much more properly be directed against its further provision permitting the amount of such tax to be included as surplus until such time as the tax becomes due and payable. (T. B. R. 17, Cumulative Bulletin No. 1, 1919, p. 294.)

The same principle was again questioned in 1924, and the Solicitor of Internal Revenue sustained the regulation, stating:

The taxpayer's premise is entirely fallacious. Liability for income and excess profits taxes arises by operation of law. That liability arises and attaches to the income of a corporation as soon as such income is earned, and it was only a matter of grace to the taxpayer that in computing invested capital it was permitted to include the amount of such taxes in its surplus and to retain it beyond the close of the taxable year and until the date of the payment of the taxes in the succeeding year.

Therefore, it is the opinion of this office that the taxpayer's consolidated invested capital for the years 1917, 1918, and 1919 should be reduced by the prorated amount of the taxes due for the respective preceding years. (S. M 1530, Cumulative Bulletin III-1, p. 307.)

In both instances, the Bureau recognized that a concession was being made to a taxpayer when the income tax for 1916 which accrued at the end of 1916 was allowed to remain a part of invested capital for 1917 until it became due and payable. When, therefore, the Commissioner ruled in 1922 (A. R. R. 1082, C. B. I-2, p. 98) that the 1916 income tax was a deduction from gross income for 1916 when the taxpayer was on the accrual basis, this decision could not be said to affect the Commissioner's position with respect to the adjustment of invested capital for 1917, even if it were conceded that this decision could modify a Treasury decision. Both prior and subsequent to this time, the Commissioner impliedly stated that even though this tax accrues as an expense at the end of 1916, invested capital will not be reduced on account thereof until it becomes due and payable, since the taxpayer will not be required to pay it until subsequent to the close of 1916. Treasury Decision 2433, which is referred to in the deficiency notice as the basis for the Commissioner's action, was not only prior to Treasury Decision 2791, but also dealt solely with the question of keeping accounts on the accrual basis under the Revenue Act of 1916, and makes no reference to invested capital for 1917. Admittedly, to use accrued expense in 1916 to reduce the profits of that year and at the same time to allow this liability as a part of invested capital for 1917 until it is paid, presents an unusual situation, but such is the effect of the regulation which the Commissioner promulgated and which he later interpreted as such a concession to taxpayers. We must assume that Congress considered that good and sufficient reasons existed for validating these regulations. The only difference between the situation in 1917 and that in the later invested capital years is that the 1916 income tax was an allowable deduction from gross income for the purpose of determining the net income of taxpayers on the accrual basis, whereas income and profits tax for 1917 and later years was not such a deduction. The fact remains, however, that the taxes which accrued for 1917 would serve to reduce the profits of 1917 which could be carried forward and become a part of invested capital at January 1, 1918, and, therefore. article 845 allows an accrued expense which

had reduced profits for 1917 to remain in invested capital for a part of 1918.

Did Congress contemplate regulations which were in force at the time the Revenue Act of 1926 was passed and returns for the various years audited, or did it merely seek to make valid the regulations which were in force when the returns under the acts specified were filed? In view of the situation mentioned above as existing at the time of the enactment of section 1207, Revenue Act of 1926, and which situation apparently prompted this action, we are unable to accept the suggestion that the " regulations " referred to were those " in force " when the returns for the various years were filed. Section 1207 specifically referred to the regulations in force with respect to the Revenue Act of 1917 on the question at issue. The only regulation which we find to have been promulgated on this question for 1917 came out as Treasury Decision 2791, on February 17, 1919, long after the returns for 1917 were due to have been filed. To say, therefore, that the " regulations in force " for 1917 were those in existence when the returns for that year were filed would make that part of the statute a nullity except as to returns for a fiscal year ending in 1918 which included a part of 1917 and which were filed after Treasury Decision 2791 was issued. We regard this construction as so unnatural that we must disregard it and follow the more natural interpretation to the effect that the regulations which were validated were those in effect when the Revenue Act of 1926 was passed. These were Treasury Decision 2791 for 1917 and article 845, Regulations 45, for 1918. The case of *Nichols* v. *Sylvester Co.*, 16 Fed. (2d) 98, is not inconsistent with the foregoing in so far as it holds that Treasury Decision 2791 was not in force when the returns there in question for 1917 were filed. The court, however, held that since the regulation was not in force when the returns were filed, section 1207 would not be applicable, but the court did not consider the effect of holding that the regulations referred to were those in force when the Revenue Act of 1926 was passed. For reasons already stated, we are of the opinion that the latter date would govern, and therefore, we can not consider the issue herein presented as being disposed of by *Nichols* v. *Sylvester Co.*, *supra*. The case of *Bowers* v. *Max Kaufmann & Co.*, 18 Fed. (2d) 69, is not in point for the reason that the year there under consideration was 1918 and not 1917.

In view of the foregoing, the Board is of the opinion that the regulation in force with respect to 1917, as contemplated by section 1207, Revenue Act of 1926, was the regulation in force when the Act was passed and that such regulation was Treasury Decision 2791, thus permitting the petitioner to include in invested capital for 1917 the income tax for 1916 until such tax became due and payable in 1917.

The third issue presented likewise relates to the computation of invested capital. A restatement of the situation which obtains with respect to one of these companies will make the point clear. The Central Company paid a dividend of $143,565 on January 9, 1917. The question before the Commissioner was whether this payment impinged upon surplus at the beginning of the year. If it did, the surplus at the beginning of the year should be reduced for the purpose of computing the invested capital for 1917. The Commissioner did not know the actual amount of the earnings of the company available for the payment of the dividend. The Commissioner determined the amount of the earnings for the entire year 1917, and deducted from gross income, among other items accrued, a tentative income and profits tax for 1917 payable upon such earnings. He then spread the balance ratably over the calendar year, and determined the amount of those earnings available for the payment of the dividend on January 9, 1917, after the deduction of such tentative tax. His computation is shown by the following extract from the deficiency notice attached to the petition of the Central Company:

In accordance with Article 107, Regulations 33, dividends are deemed to have been paid out of the most recently accumulated earnings to the extent of such earnings or profits. Treasury Decision 2700 provides that accrued Federal income and profits taxes for the current year shall be deducted from the earnings of the taxable year in order to ascertain the amount of earnings available for dividend distributions. The following computation is the method outlined in Article 857, Regulations 45:

| | |
|---|---|
| Invested Capital for year (Tentative) | $13,719,439.66 |
| Net income for year (Book) | 3,325,856.64 |
| Tentative tax | 719,090.56 |
| Net income available for dividends | 2,606,766.08 |

| Dividends paid Date | Amount | Available earnings | Paid out of surplus | No. of mos. effective | Adjusted average |
|---|---|---|---|---|---|
| 1/9/17 | $143,565.00 | $56,059.49 | $87,505.51 | 11 23/31 | $85,623.67 |
| 4/1/17 | Stock, | No effect. | | | |
| 4/9/17 | $143,565.00 | Sufficient. | | | |

As shown above, the Commissioner reduced 1917 invested capital by $85,623.67 on account of the dividend of $143,565 paid January 9, 1917. If the tentative tax of $719,090.56 had not been deducted in determining the current earnings available for dividends the company computes that the reduction in invested capital on account of the dividend paid on January 9, 1917, would be but $60,233.76. It alleges that the Commissioner erred in deducting the tentative tax and that this has resulted in an understatement of the 1917 invested capital to the extent of $25,389.91.

A similar allegation of error is made with respect to the Mexican Telegraph Co. and it is alleged that by reason thereof the invested capital for 1917 was understated in the amount of $48,361.86.

While the issue raised by the foregoing action of the Commissioner was decided by this Board in *Appeal of L. S. Ayers & Co.*, 1 B. T. A.

1135, in a manner contrary to the practice of the Commissioner, in view of certain decisions on the subject of accrual of taxes by the Supreme Court and other courts since we promulgated the foregoing decision, it is necessary to review our former action.

In the first place, is there anything in the decision of the court in *United States* v. *Anderson* and *United States* v. *Yale & Towne Mfg. Co.*, *supra*, which is inconsistent with, or would lead to a different conclusion from that taken in the *Ayers* case? In the *Anderson* and *Yale & Towne* cases the court was dealing with the question of whether, where a taxpayer is on the accrual basis, munition taxes can be said to accrue prior to the date when they are due and payable. The court very properly held that this could and did happen, in the cases then under consideration, at the end of the year for which the taxes were assessed. In so deciding, the court in effect said that the accrual took place when all events had occurred which fixed the amount of the tax and determined the liability of the taxpayer to pay it.

Under our system of Federal taxation, when returns are made and taxes paid on an annual basis (except in certain cases when due to the dissolution of a corporation or change in an accounting period, etc., a shorter period is used) the events necessary " to fix the amount of the tax and determine the liability of the taxpayer to pay it " will not have occurred until the end of the year. Prior to this time, not only is the amount of tax uncertain and indeterminate, but also the question of whether there will, in fact, be any tax due, since it is not until all items of taxable income and all allowable deductions are considered that we arrive at taxable income. Income in the first part of the year may be offset by losses in the last part to the end that while it appeared on June 30 that the taxpayer would be subject to a tax, on December 31 it is found that no tax is due. The crux of the *Yale & Towne* decision is that when everything necessary to a determination has occurred, then the tax accrues regardless of when the tax may be due and payable.

The following problem will illustrate the computation used by the Commissioner:

Net income for 1917 before considering Federal taxes_____ $15,000
Tentative tax for the year on the foregoing income_____ 3,000
Dividend declared May 1, 1917_____ 5,000
Earnings available at May 1, 1917, exclusive of an accrual of taxes
 to May 1, 1917 (⅓ of $15,000)_____ 5,000
Earnings available at May 1, 1917, after considering an accrual of
 taxes to May 1, 1917—⅓ of ($15,000—$3,000)_____ 4,000

The foregoing computation must assume that one-third of the tax for the year, or $1,000, had accrued by May 1, 1917, as otherwise there could be no basis for making a deduction from the earnings accrued to this date. While earnings accrue each day so that with

a complete accounting system it would be possible to tell the exact amount of earnings to a given date, the fact that there are earnings in a certain amount on a given date does not mean that any tax has accrued for the reason that the tax accrual does not take place until the end of the year when all events for the entire year have occurred.

Proceeding on the assumption which the Commissioner would follow in the hypothetical case with respect to accrual of earnings (exclusive of taxes), there is no more justification for reducing the earnings of $5,000 to May 1, 1917, on account of the tax which accrued at December 31, 1917, than there would be for making a reduction of earnings to this date on account of any other expense or liability which arose subsequent to this date. The facts as they exist on a given dividend date must be considered, but not facts which arose subsequent thereto.

The position taken in the *Ayers* case was that it is erroneous to reduce earnings available for dividends which are declared prior to the end of the year or period for which a return is rendered, by a computation which considers that a pro rata part of income and/or profits taxes for the year or period had accrued by a given dividend declaration date during the year, and that unless we can say that something has accrued which would reduce the earnings which are otherwise available for the payment of dividends, there can be no justification for the reduction. If earnings in a certain net amount, sufficient to pay a dividend, have accrued by the time of a dividend declaration, and a loss occurs subsequent thereto, but in the same year, equal to or greater than the earnings prior to this, can it be said that therefore there were no earnings available for the payment of the dividend and, accordingly, surplus of a prior year or paid-in capital must be reduced on account of the dividend payment? Certainly, no one would contend for an affirmative answer to the foregoing question. We are of the opinion that the only possible justification for the Commissioner's tentative-tax computation is on the theory of a day by day or ratable accrual of tax during the year or period for which the return is made and that such a theory is contrary to the principle laid down in the *Yale & Towne* case as a condition precedent to an accrual.

Two Circuit Court decisions, *Nichols* v. *Sylvester Co.*, 16 Fed. (2d) 98, and *Bowers* v. *Max Kaufmann & Co.*, 18 Fed. (2d) 69, which followed the *Yale & Towne* case, likewise dealt with cases in which similar questions were involved to that in the *Yale & Towne* case, namely, the accrual of taxes at the end of a year as opposed to an accrual at a later date, and, therefore, can not be considered as authority for more than this.

Admittedly, the case of *D'Olier* v. *United States*, 61 Ct. Cls. 895, supports the position taken by the Commissioner in his tentative tax computation, but, for reasons heretofore stated, the Board is of the opinion that the court drew an erroneous conclusion from the *Anderson* and *Yale & Towne* decisions. The fact that the Supreme Court denied a writ of certiorari in this case does not necessarily mean that the court approved the *D'Olier* case. Many other considerations may have prompted such action. The decision is apparently predicated upon the proposition that the *Anderson* and *Yale & Towne* cases held, in effect, that taxes accrue as income accrues throughout the year, and that, therefore, when a dividend is declared on a given date during the year the earnings for the year up to the dividend declaration date should be reduced on account of taxes which had accrued to that time. Since we are of the opinion that the aforementioned cases did not so decide, but, on the contrary, held that the Federal tax would only accrue at the end of the year or period when all the events had occurred which fixed the amount of the tax and determined the liability of the taxpayer to pay it, we can not accept the *D'Olier* case as a basis for departing from the position which we have previously taken in the *Ayers* case.

In a recent case, *Mason* v. *Routzahn*, 275 U. S. 175, the court, in considering a question which arose under section 31 (b), Revenue Act of 1917, with respect to the year in which the earnings from which certain dividends were paid in 1917 should be said to have been most recently accumulated, held that since it was shown affirmatively that no profits had accumulated in 1917 prior to the date of the dividend declaration date, and that there were ample earnings in 1916 for the payment of the dividends in question, the distribution in 1917 must be taxed at the 1916 rates, despite the fact that the total profits for 1917 were in excess of all dividends paid in that year. *Edwards* v. *Douglas*, 269 U. S. 204, decided prior to the foregoing case, held that a pro rata share of the entire year's earnings may be treated as approximating the actual earnings for the fraction of the year prior to the payment of the dividend in the absence of circumstances showing that there were no earnings actually accumulated during the fractional period and that the amounts actually available for payment of dividends out of the current year's earnings prior to the date of payment may be shown. These cases involved a different question from that involved in the *Ayers* case. Admittedly, earnings may be said to accrue and be available for the payment of dividends prior to the end of a year, but from the fact that earnings had accrued in a given amount at a given date we can not say that therefore Federal taxes had accrued to that date which would be a proper charge against those earnings and

would thus serve to reduce the amount which had otherwise been considered to have accrued. No liability then existed for the payment of taxes and such liability, or whether there would be any liability, could only be determined at the close of the year or period for which the return was rendered.

While the Board held in the *Ayers* case that the accrual of the income and profits tax took place when such tax became due and payable, which was subsequent to the end of the year for which assessed, whereas the *Yale & Towne* case held that tax accrued at the end of the year for which the tax was assessed, the former is not inconsistent with the latter on the principle that taxes do not accrue ratably over the year for which assessed. In view of the foregoing, the Board is of the opinion that where a taxpayer is on the accrual basis and dividends are declared during the year, the earnings available for the payment of such dividends should not be reduced on the theory that a pro rata part of the income and profits tax for the entire year had accrued to the dividend date.

The last point in issue is the right of the Central & South American Telegraph Co. to deduct from gross income as an ordinary and necessary expense a portion of the amount payable for the years 1917, 1918, and 1919 as "foreign development expense." The petitioner made no deductions from gross income in its income-tax return for 1917 of any part of the amounts charged to this account, but in 1918 and 1919 deducted from gross income $76,203.94 and $108,678.81. These deductions were disallowed by the Commissioner in the determination of the deficiencies. The petitioner has made a careful analysis of these accounts and finds that $1,350.72 charged to foreign development expense in 1918 was an ordinary and necessary expense of the company's business for the year 1917, and that $22,707.53 of the amount was an ordinary and necessary expense of 1918, and also that $50,462.38 of the $108,678.81 claimed as a deduction in the return for 1919 was an ordinary and necessary expense of the year 1919. These were found to be expenses which had nothing to do with the acquisition of concessions in Central and South American countries. The evidence upon the subject is voluminous. From a careful consideration of the same, we are of the opinion that the claims of the petitioner are fully established by the evidence, and that the amounts should be allowed as deductions from gross income, as claimed by the petitioner.

Reviewed by the Board.

*Judgment will be entered on 15 days' notice, under Rule 50.*

PHILLIPS, ARUNDELL, and MILLIKEN dissent on the second point.

SMITH dissents on the second and third points.