GUANTANAMO SUGAR CO. v. HELVERING.
No. 6458.

United States Court of Appeals for the District of Columbia.

Argued April 10, 1936.

Decided May 25, 1936.

David A. Buckley, Jr., and Harvey L. Rabbitt, both of Washington, D. C., and Richard S. Holmes, of New York City, for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Robert H. Jackson, Bruce A. Low, J. Louis Monarch, and Harry Marselli, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

GRONER, Associate Justice.

Petitioner, Guantanamo Sugar Company, is a New Jersey corporation organized in 1905. It is engaged in the business of producing and selling raw sugar and owns and operates a number of "sugar estates" in Cuba. At the commencement of its career it issued 40,000 shares of common stock of the par value of $100 each. Ten shares were sold at par for cash. The remaining 39,990 shares were exchanged for a number of sugar estates and 5,630 shares of common stock of Guantanamo Railroad Company. The railroad stock was set up on petitioner's books at $422,250 ($75 a share). Between 1905 and 1908 petitioner purchased at various times 1,066 additional shares of railroad stock at a total cash cost of $35,069.02. The shares originally and subsequently acquired have never been sold and are still owned by it. The railroad is of standard gauge, running from Guantanamo east to Jamaica and west to Soledad, and is equipped to operate freight and passenger trains. At the present time it runs from 85 to 100 miles and hauls all of petitioner's products. The book value of its shares of stock as of 1905 was $137 per share. Subsequently another road was built in the same territory, resulting in a division of business and a considerable loss of revenue. After that time the railroad was used by petitioner almost exclusively in the operation of its business and for hauling passengers; and by the end of 1918 petitioner had loaned it approximately a million dollars which is still unpaid.

In 1911 the board of directors of petitioner caused all the shares of stock of the railroad owned by it to be carried on its books at a nominal value of $1, and the sum of $465,457.81, representing their cost, was charged against surplus. That amount was not thereafter included as invested capital in the returns filed by petitioner, but for the years 1918 and 1920 petitioner claimed the right to have its invested capital increased by the amount of this item. The Commissioner refused and was sustained by the Board.

On this review the questions are, first, whether in the circumstances mentioned petitioner is entitled to restore to its invested capital for the years in question the actual cash value, as of the time of acquisition, of the 5,630 shares acquired by it (in exchange) for shares of its own stock; and, second, whether it is also entitled to include in its invested capital $35,069.02, the actual cost of the 1,066 shares purchased for cash between 1905 and 1908.

The Board held that, before the cost of the railroad stock or any of it could be restored to invested capital, petitioner was obliged to show that the value of the stock had not diminished. We assume the Board meant that the items in question could be

added to petitioner's invested capital account only to the extent of their then value (which the Board considered was $1). On this appeal the government concedes that the ground on which the Board based its conclusion is erroneous, but insists the finding should be sustained because the record shows that the Commissioner had allowed under the head of invested capital an amount largely in excess of the original corporate investment and that this is all petitioner is entitled to ask. But this is neither good reasoning nor is it in accordance with the facts. The record, it is true, shows allowed invested capital in 1918 of approximately $6,000,000 and in 1920 of approximately $7,000,000, but in each year the surplus and undivided profits item allowed, accounted for 50 per cent. or more of this, and the capital stock item was in each year at least a million dollars less than that item at organization; and there is nothing in the record which explains this discrepancy.

We must, therefore, reject the suggestion and look elsewhere for the answer.

■ The applicable statute is section 326 (a) of the Revenue Act of 1918 (40 Stat. 1057, 1092), and is as follows:

"That as used in this title the term 'invested capital' for any year means * *

"(1) Actual cash bona fide paid in for stock or shares;

"(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment, but in no case to exceed the par value of the original stock or shares specifically issued therefor, unless the actual cash value of such tangible property at the time paid in is shown to the satisfaction of the Commissioner to have been clearly and substantially in excess of such par value, in which case such excess shall be treated as paid-in surplus; * * *

"(3) Paid-in or earned surplus and undivided profits; not including surplus and undivided profits earned during the year."

The applicable regulations are Articles 831, 838, 840, 841, and 842, of Regulations 45. We take the quoted section to mean, as indeed the Commissioner concedes, that petitioner is entitled to have included in its invested capital the value of the property paid in for its own stock not to exceed the par value of the stock issued therefor, plus whatever earned surplus—as presently construed—may actually have existed at the beginning of the taxable years in question. As we have seen, petitioner at the time of its organization issued and exchanged $4,000,000 of its stock for $1,000 in cash and properties worth $3,999,000. The Commissioner does not question these figures or that the properties were fairly worth the amount which petitioner paid. Obviously, therefore, the minimum invested capital upon organization was $4,000,000. In 1911, six years after organization, petitioner debited its surplus account to the extent of $465,457.81, representing the cost to it of the shares of railroad stock, though it continued to own the stock just as it had from the beginning. It is that item which it would restore to invested capital. Of this amount $422,250 represents the original investment, and the remainder the subsequent cash investment, in the stock of the railroad.

■ We have already said that invested capital is made up of two parts, one the amount paid into the corporation for its stock or shares, either as capital or as paid-in surplus; and, second, surplus and undivided profits subsequently earned and not distributed as dividends. The first is fixed upon incorporation and is not thereafter affected except by a return of part or the whole of it to the stockholders. On the other hand, earned surplus and undivided profits are subject to be diminished by operating deficits, capital impairment, and other like causes. These rules arise out of the language of the statute, the terms of which are clear and unambiguous; and the construction we adopt is that which, so far as we know, has been universally applied when the question has arisen. In La Belle Iron Works v. United States, 256 U.S. 377, 41 S.Ct. 528, 531, 65 L.Ed. 998, the Supreme Court said that property acquired in consideration of the transfer of the original capital stock of a corporation forms a part of the invested capital of the corporation and is to be taken, in determining invested capital, then and thereafter at its value at the time of the transaction. "It is clear enough that Congress adopted the basis of 'invested capital' measured according to actual contributions made for stock or shares and actual accessions in the way of surplus, valuing them according to actual and bona fide transactions and by valuations obtaining at the time of acquisition."

In the later case of Willcuts v. Milton D. Co., 275 U.S. 215, 48 S.Ct. 71, 72 L.Ed.

247, the Supreme Court reaffirmed the rule announced in the Iron Works Case. Other decisions to the same effect are: Ralston Steel Car Co. v. Commissioner (C.C. A. 6th Circuit) 53 F.(2d) 948; Gauley Coal Co. v. Commissioner (C.C.A. 4th Circuit) 23 F.(2d) 574; Rookwood Pottery Co. v. Commissioner (C.C.A. 6th Circuit) 45 F. (2d) 43.

In News Publishing Co. v. Blair, Commissioner, 58 App.D.C. 295, 29 F.(2d) 955, we reached substantially this same conclusion; and the Board of Tax Appeals has also held in numerous cases in accordance with the above. See Appeal of Guarantee Construction Co., 2 B.T.A. 1145; Reading Hardware Co. v. Commissioner, 7 B.T.A. 337.

 The effect of all these decisions is that the original investment in a corporation, for the purpose of computing the excess profits tax, remains the same. Subsequent depreciation no more reduces than subsequent appreciation augments the amount. In this view, it is apparent that the value of the shares of stock of the railroad company acquired by petitioner at the time of its organization continues as a part of its invested capital, and this is none the less true because of the action of the directors, for company purposes, in writing down the value of the item. But what has been said as to the original investment in the railroad shares is not equally true of those subsequently purchased, for as to these the reasonable assumption is that they were acquired out of undivided profits; and in such case the regulations prescribe, and we think correctly, that the item can be restored to surplus only by taking it subject to any depreciation occurring since the investment was made. See Article 842, supra, and see also Willcuts v. Milton D. Company, supra.

Applying these rules to the instant case, it is clear that the original investment of $422,250 which petitioner made at organization is part of the permanent invested capital; and the action of petitioner in charging it to surplus does not prevent its restoration. It should, therefore, have been included in the item of fixed invested capital. To this should be added surplus and undivided profits, in which account the later investment in the shares of the railroad belongs, taken at its present value for the years in question. That this simple rule was ignored in the instant

case abundantly appears; and in the circumstances it seems to us perfectly clear that the case should be returned to the Board to ascertain, first, the amount of the original capital investment of petitioner, less any amount thereof, if any, which may have been returned to the stockholders, and to add thereto all earned surplus and undivided profits, less so much thereof as may have been lost by operating deficits or other like causes or as shall be required to make good the impairment, if any, in the original invested capital. Willcuts v. Milton D. Co., supra. The sum of these two items is the invested capital on which to compute taxation for the years in question.

Remanded to the Board of Tax Appeals with instructions to grant a rehearing and to proceed thereafter in accordance with this opinion.